UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN T. KEMP,** | Case No. 25–cv–02174–ESK–SAK |
| Plaintiff, | |
| v. | OPINION |
| **PRO CAP 4 LLC,** *et al.*, | |
| Defendants. | |

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on plaintiff John T. Kemp's motion to reopen the case. (ECF No. 10.) For the following reasons, the motion will be DENIED.

    I.    **BACKGROUND**

        A.    **The Second Amended Complaint**

    Plaintiff is the former owner of a residential property in Haddon Heights. (ECF No. 10–1 (Am. Compl.) p. 15.) Defendant PRO CAP 4 LLC is a New Jersey limited liability company that purchased a tax-sale certificate for the property and initiated foreclosure proceedings. (*Id.*) Defendant PC4REO, LLC was formed to take title to the property, has made substantial improvements to the property, and has sought to sell the property. (*Id.*) Defendant Marc Rubinsohn is the principal of both PRO CAP 4 and PC4REO. (*Id.*) Plaintiff has named numerous additional private and government defendants (*id.* pp. 15–17) who will be referenced as necessary below.

    Plaintiff's claims revolve around the foreclosure on the property and, more specifically, defendants' alleged retention of surplus equity. Plaintiff allegedly purchased the property in May 2006. (*Id.* p. 18.) On October 18, 2016, PRO

CAP 4 purchased a municipal tax-sale certificate from the Borough of Haddon Heights for $2,330.07 with a $16,600 premium. (*Id.* p. 19.) Defendants filed a foreclosure complaint on December 17, 2018 and default judgment and transfer of title took place on June 29, 2020. (*Id.*) No judicial evaluation of the property's fair-market value, existence of surplus equity, or plaintiff's willingness or ability to redeem took place, according to plaintiff. (*Id.* p. 24.) Plaintiff claims that—as of March 2020—the certified amount due to PC4REO was $49,532.37 and a 2021 appraisal of the property valued it at $380,000. (*Id.* pp. 19, 20.)

In late 2021, plaintiff secured preliminary approval of funding, but his counsel failed to certify the availability of these funds to the state court—depriving him of a meaningful opportunity to redeem the property. (*Id.* pp. 20, 21.)[1] During foreclosure proceedings, PRO CAP 4, PC4REO and their counsel—defendants Gary Zeitz, LLC, Gary Zeitz, and Robin London-Zeitz—allegedly misrepresented the nature and enforceability of separate liens. (*Id.* p. 21.) Defendant Camden County Sheriff's Office enforced the foreclosure judgment on March 30, 2022 and evicted plaintiff from the property. (*Id.* p. 23.) The writ of possession used to evict him was defective, according to plaintiff, and he was denied a meaningful opportunity to challenge the writ, assert his right to surplus equity, or raise objections. (*Id.* p. 26.)

In May 2023, the Supreme Court issued its decision in *Tyler v. Hennepin County*, concluding that the plaintiff stated a Fifth Amendment Takings Clause

---

[1] Elsewhere in the amended complaint, plaintiff asserts that his attempt to redeem was rejected without review, defendants refused to accept redemption funds, and defendants knew or should have known that he was in possession of liquid redemption funds. (Am. Compl. pp. 49, 51, 56.) These allegations appear to be contradicted by plaintiff's claim that counsel failed to certify the availability of redemption funds. (*Id.* pp. 20, 21.) Indeed, plaintiff states that defendants' coordinated conduct included "[s]uppression of certified redemption funds *presented to Plaintiff's attorney* prior to final judgment" and redemption funds "had been *provided to counsel but not certified to the court.*" (*Id.* pp. 54, 63 (emphasis added).)

2

claim by alleging that the county retained surplus equity after selling her home. 598 U.S. 631, 639 (2023).  The Appellate Division, in a June 2023 ruling in plaintiff's case, failed to address his Takings claim, which plaintiff asserts "reinforc[es] the futility of relying on state remedies for vindication of federal rights."  (Am. Compl. p. 27.)

Defendant Richard Dolson of defendant Coldwell Banker Realty listed the property in April 2024 following defendants' substantial renovations to the property.  (*Id.* pp. 27, 28.)  Plaintiff asserts that these renovations were funded by his equity in the property.  (*Id.* p. 29.)  The loss of his home and equity have resulted in health, familial, and employment-related harms.  (*Id.* pp. 30, 33, 34.)  Private and government defendants acted jointly and under color of state law to deprive him of his home, equity, and right to be heard, according to plaintiff.  (*Id.* p. 35.)  He seeks redress for the uncompensated Taking, denial of procedural due process, and misuse of judicial process.  (*Id.*)

### B.   **Procedural History**

Plaintiff originally filed this action on March 30, 2025 and sought to proceed *in forma pauperis*.  (ECF No. 1–1, ECF No. 1–2.)  He thereafter submitted the New Jersey Appellate Division's denial of his second motion for reconsideration (ECF No. 4 (May 2, 2025 Notice), ECF No. 4–1) and moved for injunctive relief (ECF No. 5), which PC4REO opposed (ECF No. 6).  I granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § (Section) 1915 in a July 1, 2025 order.  (ECF No. 9 (July 1, 2025 Order) p. 2.)  In that same order, I screened the original complaint and concluded that it constituted impermissible shotgun pleading in which the alleged violative actions were pleaded against defendants generally.  (*Id.* pp. 2, 3.)  I also recognized the potential applicability of abstention and preclusion doctrines (*id.* p. 1 n. 1) and found that plaintiff failed to allege equity in the property by merely citing its appraised value (*id.* p. 3).  Plaintiff also did not allege that the property had

3

been sold. (*Id.*) To the contrary, the Appellate Division had concluded in the decision cited by plaintiff that he had not demonstrated any credible evidence establishing surplus equity in the property. (*Id.*)

The amended complaint and pending motion followed. Plaintiff asserts claims pursuant to 42 U.S.C. §1983 for violation of the Takings Clause of the Fifth Amendment, procedural due process under the Fourteenth Amendment, and the Excessive Fines Clause of the Eighth Amendment. (Am. Compl. pp. 39–53.) He claims that defendants jointly conspired to violate his constitutional rights. (*Id.* pp. 53–57.) Plaintiff also asserts unjust enrichment and fraudulent conveyance claims and seeks to place the property, any proceeds, any profits or appreciation from improvements, and any funds derived from wrongful retention of surplus in a constructive trust. (*Id.* pp. 57–66.) He requests further relief including restoration of legal title, equitable clarification that any improvements to the property were made at defendants' own risk, and $23.6 million representing the value of the home, surplus equity, emotional and physical distress, loss of creditworthiness, and out-of-pocket expenses. (*Id.* pp. 67–72.)

## II. STANDARD AND PARTY ARGUMENTS

### A. Applications to Proceed *In Forma Pauperis*

Pursuant to Section 1915, a court may authorize an action "without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. §1915(a)(1). Though the statute refers to prisoners, non-prisoners may also apply to proceed *in forma paupers* under Section 1915. *Owens v. Jeneby*, Case No. 24–11222, 2025 WL 1393205, at *1 n. 3 (D.N.J. May 14, 2025). I have already granted plaintiff *in forma pauperis* status. (July 1, 2025 Order p. 2.) Section 1915

further requires district courts to screen and dismiss cases in which the litigant proceeding *in forma pauperis* fails to state a claim on which relief may be granted. *El v. Marino*, 722 F. App'x 262, 266 n.3 (3d Cir. 2018); *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii) (stating that courts shall dismiss cases at any time upon a determination that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief).[2] "To adequately state a claim for relief, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Epshteyn v. Burr*, 610 F. App'x 131, 131 (3d Cir. 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

### B.  Party Arguments

PC4REO opposes plaintiff's motion, asserting that much of the amended complaint still impermissibly groups defendants together and represents the latest in a series of bad-faith tactics intended to obstruct its sale of the property. (ECF No. 11–2 (PC4REO Opp'n Br.) pp. 10–13.)   Even assuming that plaintiff has a valid claim to surplus equity, his remedy would be monetary damages—not vacating final judgment and having title restored. (*Id.* pp. 14–16.) Plaintiff's primary aim is to collaterally attack final judgment, according to PC4REO, which is barred by the *Rooker-Feldman* doctrine as final judgment was entered in state court in June 2020 and plaintiff has repeatedly failed to successfully challenge that judgment. (*Id.* pp. 16, 17.)   Finally, PC4REO

---

[2] Plaintiff names as defendants state officials including Governor Philip D. Murphy, Acting Director of the New Jersey Division of Taxation Marita Sciarrotta, and Director of the New Jersey Division of Local Government Services Michael F. Rogers. (Am. Compl. pp. 16, 17.)   "Eleventh Amendment sovereign immunity extends to state entities that are sufficiently intertwined with the state to be 'arms of the state.'   This sovereign immunity extends to state officials acting in their official capacity." *Ecurie Reve Avec Moi Inc./Dream With Me Stable Inc. v. N.J. Racing Comm'n*, 767 F. App'x 233, 236 (3d Cir. 2019) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007)).   Because I will dismiss plaintiff's claims on alternative grounds, I do not further consider the potential applicability of immunity.

argues that plaintiff has not asserted an unjust enrichment claim because there was no underlying contract, no conferred benefit, and no expectation of remuneration and that tax lien foreclosures are not subject to the New Jersey Uniform Fraudulent Transfer Act.  (*Id.* pp. 18–20.)

Plaintiff responds stating that, while monetary compensation is standard for Fifth Amendment claims, he may seek a complete remedy—including the property taken.  (ECF No. 12 (Pl.'s Reply Br.) p. 8.)  The Takings Clause requires "just compensation" and he seeks both monetary and equitable relief.  (*Id.* pp. 14, 15.)  Even if the Court were to limit him to compensatory relief, he asserts that his claim is redressable as declaratory relief would establish the illegality of defendants' actions and injunctive relief would compel the return of equity.  (*Id.* pp. 15, 16.)  He rebuts PC4REO's argument as to futility, contending that prejudice to defendants requires more than the inconvenience of defending the merits of his claims and the prospect of an adverse judgment.  (*Id.* p. 13.)  Plaintiff also claims that the *Rooker-Feldman* doctrine is inapplicable because an independent injury exists whether or not the foreclosure judgment was valid.  (*Id.* pp. 16, 17.)  Finally, plaintiff claims that PC4REO overstates the law as to the Uniform Fraudulent Transfer Act, his fraudulent transfer claim simply offers an "additional statutory lens on the same unconstitutional transfer of value," and that he has sufficiently pleaded the elements of an unjust enrichment claim.  (*Id.* pp. 9, 17–19.)

### III. DISCUSSION

#### A. *Tyler* **and** *Roberto*

Because plaintiff relies heavily on both *Tyler* and the New Jersey Supreme Court's recent decision in *257–261 20th Avenue, Realty, LLC v. Roberto*, 327 A.3d 1177 (N.J. 2025), I find it useful to first review those opinions.

In *Tyler*, the county imposed an annual tax on real property and failure to pay was accompanied by interest and penalties, limited title transferring to the

state, and—eventually—absolute title to the state with the state able to keep the property for public use or sell it and retain any excess proceeds. 598 U.S. 635. The plaintiff purchased a condominium and, upon moving to a senior community, failed to pay property taxes, totaling $2,300 plus $13,000 in interest and penalties. *Id.* The county seized the condominium, sold it for $40,000, and kept the $25,000 excess. *Id.* The question presented was whether the remaining value in the property was protected from uncompensated appropriation. *Id.* at 638. The Supreme Court concluded that the county possessed the power to sell the home and recover unpaid taxes, but could not take more than what was owed and thus the plaintiff plausibly alleged a Takings Clause claim. *Id.* at 639, 647.

The defendant in *Roberto* failed to pay three sewer bills and the plaintiff purchased tax-sale certificates and filed a foreclosure complaint. 327 A.3d at 1183. Judgment was entered against defendant but the trial court granted relief from judgment pursuant to state court rules. *Id.* at 1183–84. The Appellate Division affirmed, finding that *Tyler* also provided a basis to vacate judgment and that the *Tyler* decision was to be given pipeline retroactivity. *Id.* at 1184.[3] The New Jersey Supreme Court affirmed as to the Appellate Division's *Tyler* reasoning, finding that to the extent that New Jersey's pre-2024 Tax Sale Law[4] permitted lienholders to retain surplus equity beyond the

---

[3] "New rules given 'pipeline retroactivity' apply to 'all future cases, the case in which the rule is announced, and any cases still on direct appeal.'" *Primmer v. Harrison*, 275 A.3d 918, 927 (N.J. Super. Ct. App. Div. 2022) (quoting *N.H. v. H.H.*, 13 A.3d 399, 412 (N.J. Super. Ct. App. Div. 2011)). Post-*Roberto*, the Appellate Division has found that retroactive application of *Tyler* does not apply where a party seeks to belatedly vacate an appropriately entered final judgment. *See SL RE1, LLC v. Estate of Hoshowsky*, Case No. A–1242–23, 2025 WL 1498969, at *6 (N.J. Super. Ct. App. Div. May 27, 2025).

[4] After the New Jersey Supreme Court granted certification, the Legislature amended the state's foreclosure laws in response to *Tyler*. *Roberto*, 327 A.3d at 1186.

7

debts owed, it did not survive constitutional scrutiny. *Id*. at 1194. Property owners on direct review therefore had a plausible claim to the value of property beyond the debt owed. *Id*. Relevant here, the New Jersey Supreme Court decided that private lienholders acting pursuant to the Tax Sale Law could be considered state actors because they act jointly with local governments through a state statutory scheme to seize property to satisfy tax debts. *Id*. at 1192.

### B. The *Rooker-Feldman* Doctrine

Dismissal under the *Rooker-Feldman* doctrine is appropriate when (1) the federal plaintiff lost in a state-court proceeding, (2) the state-court judgment was rendered prior to the filing of the federal action, (3) the federal plaintiff invites review or rejection of the state-court judgment, and (4) the federal plaintiff complains of injuries caused by the state-court judgment. *Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023). The Third Circuit has affirmed dismissals where the plaintiffs requested relief from state foreclosure orders. *See, e.g.*, *Kajla v. Cleary*, 821 F. App'x 119, 121 (3d Cir. 2020); *see also Monclova v. US Bank NA*, 675 F. App'x 115, 117 (3d Cir. 2017) (concluding that application of the *Rooker-Feldman* doctrine was appropriate to the challenge of a mortgage-foreclosure judgment because New Jersey courts granted judgment to the defendant, plaintiff claimed to be injured by that judgment, the foreclosure proceeding preceded the federal case, and the plaintiff sought to overrule the state-court order); *but see Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 126 (3d Cir. 2016) (noting the narrowness of the *Rooker-Feldman* doctrine and that the plaintiff's claims could be construed to include conduct unrelated to the right to foreclose).

---

This included permitting owners to demand a judicial sale or internet auction and to have surplus sale proceeds returned to them. *Id.*

Plaintiff assures me that he "does not seek to overturn or relitigate the foreclosure judgment." (Pl.'s Reply Br. p. 17.) However, the complaint makes allegations such as defendants' execution and facilitation of an "unconstitutional foreclosure judgment" absent a judicial determination of equity and that the writ of possession was defective because it was executed without a hearing as to equity, notice of forfeiture, or consideration of funds available for redemption. (Am. Compl. pp. 40, 41, 46.) He seeks relief including a declaration that the foreclosure was unconstitutional, an order restoring legal title to the property and voiding all associated transfers and encumbrances, and—alternatively—injunctive relief barring further enforcement of the foreclosure. (*Id.* pp. 67–69.) Plaintiff is plainly referring to a state-court foreclosure judgment that precedes this action from which he claims injury and seeks relief. *See Monclova*, 675 F. App'x at 117. The fact that plaintiff may not expressly be seeking a reversal of a state-court order does not make the *Rooker-Feldman* doctrine less applicable. *See Wells Fargo Bank NA v. Carr*, Case No. 18–09066, 2018 WL 2192715, at *3 (D.N.J. May 14, 2018) ("This Court is prohibited by the *Rooker-Feldman* doctrine from providing relief that would effectively reverse the decisions, directly or indirectly invalidate the determinations, prevent the enforcement of the orders, or void the rulings of the State Court in the State Foreclosure Action.").

Insofar as plaintiff's Takings Clause claim may be construed as being separate from the foreclosure judgment, *see Cuevas*, 643 F. App'x at 126, plaintiff himself has identified another hurdle. In March 2024, plaintiff filed a second motion for reconsideration in Superior Court seeking to vacate judgment, this time on the basis that pipeline retroactivity of *Tyler* applied. *PC4REO, LLC v. Kemp*, Case No. A–3105–23, 2025 WL 1271857, at *1–2 (N.J. Super. Ct. App. Div. Apr. 2, 2025). The motion was denied. *Id.* at *2. In its April 2025 decision affirming, the Appellate Division stated that the parties'

briefs for the appeal of the Superior Court's order denying plaintiff's original motion to vacate and motion for reconsideration were filed in March 2023, prior to *Tyler*. *Id.* at *4. Plaintiff's recourse was to file a motion for reconsideration of the Appellate Division's 2023 decision following *Tyler*. *Id.* Plaintiff failed to demonstrate "any credible evidence establishing any surplus equity in the Property" and the Appellate Division "discern[ed] no basis to grant [plaintiff] pipeline retroactive relief under *Tyler*." *Id.* at *4–5.

I referenced this same conclusion in my original dismissal order. (July 1, 2025 Order p. 3.) Though plaintiff asserts that "*Tyler* applies retroactively to all pending cases—squarely covering this one," (Pl.'s Reply Br. p. 4), New Jersey courts have definitively concluded otherwise. Citation to the 2025 Appellate Division decision as "clear evidence of exhaustion of remedies, futility of further state litigation, and ongoing harm" (May 2, 2025 Notice p. 3) is unavailing. State-court orders are not merely an administrative barrier that plaintiff must clear before taking his case to federal court or for which jurisdiction may be satisfied by plaintiff's disagreement with the result. *See Benhaim v. Borough of Highland Park*, 79 F. Supp. 3d 513, 520 (D.N.J. 2015) ("Under [the *Rooker-Feldman*] doctrine, lower federal courts cannot entertain federal claims that were previously adjudicated in state court or are inextricably intertwined with a state court decision. A federal claim is inextricably intertwined with a prior state court decision if 'granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling.'") (citations omitted) (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas.*, 75 F.3d 834, 839–40 (3d Cir. 1996))).[5] Insofar as

---

[5] Plaintiff cites the Sixth Circuit's decision in *Hall v. Meisner*, 51 F.4th 185 (6th Circuit) as an example of "Post-*Tyler* … courts … reject[ing] *Rooker-Feldman* in materially identical contexts." (Pl.'s Reply Br. p. 17.) That decision both preceded *Tyler* and makes no mention of the *Rooker-Feldman* doctrine.

plaintiff seeks to challenge the underlying foreclosure or the state courts' decision not to apply *Tyler* retroactively, his recourse was to appeal to the New Jersey Supreme Court and then the United States Supreme Court. I am without jurisdiction to consider it. *See Kajla*, 821 F. App'x at 121 ("The *Rooker-Feldman* doctrine deprives a District Court of jurisdiction to review, directly or indirectly, a state court decision.").[6]

### C. State-Law Claims

#### 1. Unjust Enrichment

"The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself at the expense of another." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 464 (D.N.J. 2020) (quoting *Goldsmith v. Camden Cnty. Surrogate's Off.*, 975 A.2d 459, 462 (N.J. Super. Ct. App. Div. 2009)). To plead an unjust enrichment claim, a plaintiff must allege that they conferred a benefit on the defendant and the defendant's retention of that benefit without payment would be inequitable. *See id.* The plaintiff must further show that they expected remuneration at

---

[6] Count 3 of the amended complaint asserts an Excessive Fines Clause claim, arguing that the alleged government-enabled forfeiture of equity far exceeded what was necessary to satisfy plaintiff's tax obligation and that his failure to pay property taxes did not warrant forfeiture of his home and equity. (Am. Compl. pp. 50, 51.) He seeks punitive damages "given Defendants' refusal to return surplus equity even after [*Tyler*] reaffirmed that such takings are per se unconstitutional." (*Id.* p. 53.) The Supreme Court did not reach the plaintiff's Excessive Fines argument in *Tyler*. 598 U.S. at 647–48. Post-*Tyler* courts have accordingly applied pre-*Tyler* law to Excessive Fines claims. *See, e.g.*, *Freed v. Thomas*, 81 F.4th 655, 659 (6th Cir. 2023) (noting that, because the Excessive Fines claim was not reached in *Tyler*, its prior decision finding that Michigan's General Property Tax Act was not punitive remained binding). Plaintiff points to no decision finding that New Jersey's Tax Sale Law violates the Excessive Fines Clause and I have found none. The Excessive Fines Clause is only violated if the disputed fee is both a fine and excessive. *Ebert v. Twp. of Hamilton*, Case No. 15–07331, 2018 WL 3772677, at *10 (D.N.J. Aug. 9, 2018). A "fine" refers to a punishment for a criminal offense. *Id.* Plaintiff cites no criminal offense for which he has allegedly been punished. Count 3 of the amended complaint will be dismissed.

the time that they performed or conferred the benefit and that failure to remunerate would enrich the defendant beyond their contractual rights. *Id.*

That latter requirement is unaddressed by plaintiff. The amended complaint states that unjust enrichment arises when a party confers a benefit upon another and it would be inequitable to permit them to retain that benefit without restitution. (Am. Compl. p. 58.) The benefit here is plaintiff's allegedly forfeited equity. (*Id.* p. 59.) Finding that a benefit has been conferred at all arguably runs counter to the Appellate Division's conclusion that plaintiff had "not demonstrated any credible evidence establishing any surplus equity in the Property." *PC4REO*, 2025 WL 1271857, at *5. Insofar as the Appellate Division's decision does not serve as a barrier to plaintiff's claim, he nonetheless fails to allege that he expected remuneration or that failure to remunerate would enrich defendants beyond their contractual rights.

The Appellate Division has not found a viable unjust enrichment claim in analogous circumstances. For instance, in *City of East Orange v. Block 174, Lot 18.1 (#16) Assessed to Naden, LLC, 122 North Maple Ave., East Orange*, the defendant contended that the lower court abused its discretion in not imposing a constructive trust, arguing that if default judgment was not vacated the city would not only recover the redemption amount but also the full value of the property. Case No. A–0856–20, 2022 WL 1086473, at *1, 9 (N.J. Super. Ct. App. Div. Apr. 12, 2022). The Appellate Division affirmed, rejecting the defendant's unjust enrichment claim because the defendant did not expect remuneration and any enrichment was due to the defendant's failure to redeem before default judgment rather than any misdeed by the city. *Id.* at *10.

Similarly, the plaintiff in *Adar Aleph, LLC v. TDJP Properties., LLC* redeemed the property and made repairs only to have the lower court's vacation order reversed and title return to the defendant. Case No. A–1727–22, 2024 WL 649263, at *1 (N.J. Super. Ct. App. Div. Feb. 16, 2024). The plaintiff filed

an unjust enrichment claim premised on the value of the improvements. *Id.* The Appellate Division affirmed dismissal, concluding that the plaintiff did not allege that it expected remuneration when it made improvements to the property. *Id.* at *3

The same principles are applicable here. The amended complaint does not allege that plaintiff expected remuneration at the time the alleged benefit was conferred or that any failure to remunerate wound enrich defendants beyond some contractual right not itself detailed. *See Red Hawk Fire & Sec., LLC*, 449 F. Supp. 3d at 464. Count 5 will therefore be dismissed.[7]

### 2. **Fraudulent Conveyance**

Finally, plaintiff brings a fraudulent conveyance claim pursuant to N.J. Stat. Ann. §25:2–25 against PC4REO and Rubinsohn. The purpose of the Uniform Fraudulent Transfer Act is to prevent debtors from placing their property out of the reach of creditors. *Rosario v. Marco Constr. and Mgmt. Inc.*, 128 A.3d 1131, 1138 (N.J. Super. Ct. App. Div. 2016). A fraudulent conveyance claim allows a creditor to undo a transaction so that the property may be collected. *Id.* N.J. Stat. Ann. §25:2–25 provides that a transfer made by a debtor is voidable if the debtor made the transfer

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[7] Because I will dismiss Count 5 alleging unjust enrichment, I will also deny Count 6, which seeks imposition of a constructive trust. *See VendorPass, Inc. v. Texo Sols., L.L.C.*, Case No. A–4015–14T2, 2017 WL 444303, at *3 (N.J. Super. Ct. App. Div. Feb. 2, 2017) (noting that imposition of a constructive trust requires the party against whom it is imposed to have committed a wrongful act and "the wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient" (quoting *Flanigan v. Munson*, 818 A.2d 1275, 1281 (N.J. 2003)).

> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (b) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.
>
> N.J. Stat. Ann. §25:2–25(a).

To plead such a claim, the plaintiff must allege (1) "the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance" and (2) that the transfer was made with an intent to defraud, delay, or hinder the creditor. *MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 435 (D.N.J. 2012) (quoting *Gilchinsky v. Nat'l Westminster Bank N.J.*, 732 A.2d 482, 488 (N.J. 1999)). Courts look to the factors listed in N.J. Stat. Ann. §25:2–26 to determine whether there was an intent to defraud, including whether the transfer was to an insider, the debtor retained possession or control of the transferred property, or the transfer was disclosed or concealed. *Id.*

Plaintiff claims that PC4REO and Rubinsohn accepted transfer of the property despite having actual or constructive knowledge of available redemption funds and that taking the property would be unjust. (Am. Compl. pp. 63, 64.) As a result, plaintiff claims that he became a creditor under the Uniform Fraudulent Transfer Act. (*Id.* p. 64.) It is unclear how PC4REO and Rubinsohn's *acceptance* of transfer constitutes their placing of an asset beyond the reach of a creditor. It is further unclear how PC4REO and Rubinsohn's acceptance of the property transformed plaintiff into a creditor, which—under the Uniform Fraudulent Transfer Act—simply means that he has a claim. N.J. Stat. Ann. §25:2–21. A "claim," in turn, refers to "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.*

I find that I need not answer these questions because PC4REO directs me to N.J. Stat. Ann. §54:5–87 in support of the proposition that a tax foreclosure judgment is not "a sale, transfer, or conveyance of title or interest to the subject property" under the Uniform Fraudulent Transfer Act. (PC4REO Opp'n Br. pp. 19, 20 (quoting N.J. Stat. Ann. §54:5–87).) Indeed, the Uniform Fraudulent Transfer Act exempts tax foreclosures. *In re Hackler and Stelzle-Hackler*, 938 F.3d 473, 480 (3d Cir. 2019). Plaintiff claims that PC4REO overstates the law, but goes on to clarify that the fraudulent conveyance count "simply offers an additional statutory lens on the same unconstitutional transfer of value—reinforcing that the transaction was not only unlawful under federal law, but also voidable under state law principles." (Pl.'s Reply Br. pp. 9, 18.) Because plaintiff does not substantively rebut PC4REO's argument that the transactions at issue are outside the ambit of the Uniform Fraudulent Transfer Act and plaintiff has nonetheless inadequately alleged a fraudulent conveyance claim, Count 7 will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, plaintiff's motion (ECF No. 10) will be DENIED. An appropriate order accompanies this opinion.

    */s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: September 29th, 2025